879 F.2d 677
 26 Soc.Sec.Rep.Ser. 265, Medicare&Medicaid Gu 37,959
WASHINGTON STATE HEALTH FACILITIES, ASSOCIATION, a
Washington corporation; Ulysses Rowell, Jr. and Virginia
Rowell, a marital community; Philip Gayton and Beverly
Gayton, a marital community; Triple C Convalescent Centers,
a partnership; and Andrew Branch, Plaintiffs-Appellees,
v.
STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH
SERVICES; and Gerald Thompson, Secretary,
Washington State Department of Social
and Health Services,
Defendants-Appellants,
v.
CENTENNIAL VILLAS, INC., a Washington corporation; Villa
Care, Inc., a Washington corporation; and
Unicare, Inc., a Washington corporation,
Plaintiffs-Intervenors-Appellees.
 No. 87-3882.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 14, 1988.
Decided July 14, 1989.
 
 Allen T. Miller, Jr., Asst. Atty. Gen., Olympia, Wash., for defendants-appellants.
 James R. Watt, Peter A. Deming, and Thomas H. Grimm, Inslee, Best, Doezie & Ryder, P.S., Bellevue, Wash., for plaintiffs-appellees.
 Jerry Kindinger, Richard J. Howard, and Thao Tiedt, Ryan, Swanson & Cleveland, Seattle, Wash., for plaintiffs-intervenors-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before WRIGHT, WALLACE and HUG, Circuit Judges.
 OPINION
 HUG, Circuit Judge:
 
 
 1
 This case concerns the establishment of the effective date of an amendment to the Washington State Medicaid Plan. The Department of Social and Health Services of the State of Washington ("DSHS") adopted a regulation that changed the method of reimbursement to health care providers under the federally adopted Washington State Medicaid Plan. In an earlier decision, we held that in order to implement that regulation it was necessary to submit an amendment to the state medicaid plan to the Department of Health and Human Services ("HHS") and obtain its approval.[1] Under the pertinent federal regulations, HHS determines the effective date of a new plan, which cannot be earlier than the beginning of the quarter in which an "approvable plan" is submitted to it. The crux of this litigation is the determination of the effective date of the amended plan. This, in turn, depends upon when an approvable plan was submitted. We uphold the HHS's determination of the effective date and thus reverse the judgment of the district court.
 
 I.
 FACTS
 
 2
 In July 1979, DSHS adopted a new state regulation, WAC 388-96-222(2)(d)(ii), which changed the method of reimbursement to health care providers. This regulation provided that health care providers must refund all medicaid payments received from recipients in excess of the providers' actual audited administration, operations, and property costs. The change conflicted with the federally approved state medicaid plan which allowed health care providers to retain these overpayments, or "cost savings," as profits. Simultaneously, with the change in the cost savings rule, DSHS implemented a "return on equity" system which compensated health care providers by allowing them a return on their investment.
 
 
 3
 In September 1979, DSHS submitted an amended plan, Transmittal No. (TN) 79-15, as a new state plan to HHS for review and approval pursuant to 45 C.F.R. Sec. 201.3 (1987).[2] The amended plan incorporated the state regulation which changed the cost savings rule.
 
 
 4
 In November 1979, Washington State Health Facilities Association, a trade association with approximately 147 licensed nursing home members, and various independent convalescent homes filed suit in the United States District Court for the Western District of Washington to enjoin DSHS from collecting any overpayments that would be due under the new regulation until HHS had approved the amended plan. On March 17, 1981, the district court granted the providers' motion for summary judgment and enjoined DSHS from enforcing the new state regulation "until such time as [HHS] approves of such amendment to the state plan." DSHS appealed.
 
 
 5
 While the action was pending in district court, DSHS submitted two additional amended plans as new state plans to HHS for review and approval. TN 79-21 was submitted on December 27, 1979, and TN 80-7 was submitted on September 30, 1980. TN 79-21 superseded TN 79-15, and TN 80-7 superseded TN 79-21. Like TN 79-15, both of the new state plans required health care providers to refund costs savings. TN 79-21 was nearly identical in substance to the first amended plan submitted, TN 79-15, but it differed in format in that it separated the existing reimbursement methodology described in TN 79-15 into two parts, one section addressing skilled nursing facility services and intermediate care facility services and the other addressing intermediate care facility services in institutions for the mentally retarded or persons with related conditions. TN 80-7 separated the reimbursement methodology into the same two parts as TN 79-21, but was different in that clarifications had been made throughout the text.
 
 
 6
 During this same time period, there was an exchange of correspondence between different officials of HHS and DSHS involved in the review process. In internal memoranda between the federal offices of Albert Benz, the Regional Medicaid Director, and Robert Streimer, the Director of the Division of Alternative Reimbursement Systems, regarding the suitability of the three amended plans for approval, HHS officials noted that items existed in all three plans that required further clarification and that appeared unreasonable. In one letter dated January 7, 1981, an HHS official notified Conrad Thompson, the Director of the Bureau of Nursing Home Affairs, a subdivision of DSHS, of HHS central staff comments pertaining to amended plans TN 79-15 and TN 80-7 and asked DSHS to respond to each item by making the appropriate clarifications. DSHS responded a couple of times by letter to both Benz and Streimer, clarifying items in the amended plans to demonstrate that the amended plans were fully approvable. In a memo dated March 13, 1981, Maurice Cunningham, Acting Regional Medicaid Director, informed Streimer that as a result of the clarifications made by DSHS, "we believe [TN 79-15 and TN 79-21] are now approvable." HHS officials requested and were granted, as late as September 28, 1981, numerous 90-day extensions from DSHS to complete their review of all three amended plans.[3]
 
 
 7
 By letter of November 6, 1981, HHS notified DSHS that the first amended plan, TN 79-15, was approved, and designated its effective date as July 1, 1979, the first day of the calendar quarter in which it was submitted.[4] In addition, HHS approved TN 79-21 and TN 80-7, and designated their effective dates as October 1, 1979, and July 1, 1980, the first days of the calendar quarters in which they were submitted, respectively.
 
 
 8
 On November 9, 1982, we upheld the injunction which prohibited the state from enforcing the regulation until HHS had approved the amended plan. Washington State Health Facilities Ass'n v. Washington Dept. of Social and Health Servs., 698 F.2d 964, 965 (9th Cir.1982). We noted that HHS had since approved the amended plan incorporating the regulations, but remanded the case to the district court to determine the effect of that approval since the parties had not had an opportunity to develop the facts or brief the issues relating to the approval. Id. at 965 & n. 2. The date that the regulation could go into effect was not an issue before us at that time.
 
 
 9
 In October 1983, Centennial Villas, Inc., Villa Care, Inc., and Unicare, Inc. were granted permission to intervene. Washington State Health Facilities Association was dismissed upon its own motion, but the independent convalescent homes that joined in bringing the original suit remained as plaintiffs.
 
 
 10
 In April 1985, the case was again submitted to the district court on the record consisting of a stipulation of facts, a stipulation of computations, and various affidavits. After oral arguments on January 16, 1987, the district court, in an oral decision, stated that in view of all the evidence presented, the only date on which it could be established that the amended plans were approvable was November 6, 1981, the actual date of approval. Accordingly, the district court held the nursing home providers were entitled to cost savings realized up to November 6, 1981.
 
 
 11
 On March 23, 1987, DSHS moved for a new trial and to alter the judgment pursuant to Fed.R.Civ.P. 59. In support of its motion, DSHS submitted an affidavit from Streimer and a supplemental affidavit from Benz. On April 16, 1987, the district court denied the motion, although it did amend the findings of fact upon the agreement of the parties to correct some minor discrepancies. The district court did not make any ruling on whether the additional affidavits were considered, nor did the health care providers make a motion to strike them.[5] DSHS appeals the district court's order denying its motion for a new trial and to alter the judgment.
 
 II.
 SCOPE OF THE APPEAL
 
 12
 The nursing home providers contend that since DSHS only identified the order denying its motion for a new trial and to alter judgment in its notice of appeal, this court's review should be limited to the order and should not extend to the district court's judgment. Although the notice of appeal only specifies the order and fails to identify the judgment, we find that we may nevertheless review the judgment.
 
 
 13
 As long as the opposing party cannot show prejudice, "courts of appeal may treat an appeal from a postjudgment order as an appeal from the final judgment." Ward v. County of San Diego, 791 F.2d 1329, 1331 (9th Cir.1986) (citing Foman v. Davis, 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962)), cert. denied, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). DSHS's intent to appeal the district court's judgment as well as the district court's denial of DSHS's post-judgment motion is clear. In its brief, DSHS only addresses the two issues that were the basis of the district court judgment-when the amended plans became approvable and effective, and whether HHS properly interpreted 45 C.F.R. Sec. 201.3(g) (1987). In addition, the parties fully briefed and argued these questions, so that the defect in the notice of appeal did not mislead or prejudice the health care providers. Therefore, we may treat DSHS's appeal of the order denying its Rule 59 motion as an appeal of the underlying judgment.
 
 III.
 ANALYSIS
 A. Standard of Review
 
 14
 Our standard in reviewing agency decisions is the same as that to be used by the district court. Oregon v. Bureau of Land Management, 876 F.2d 1419, 1424 (9th Cir.1989).[6] Thus, we will only set aside an agency's determination if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A) (1982); California Dept. of Health Servs. v. United States Dept. of Health and Human Servs., 853 F.2d 634, 636 (9th Cir.1988); Garrett v. Lehman, 751 F.2d 997, 999 n. 1 (9th Cir.1985). An agency's interpretation of its own regulations is entitled to a high degree of deference and will be upheld as long as it is not plainly erroneous or inconsistent with the regulation. United States v. Larionoff, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977); Sierra Club v. Clark, 756 F.2d 686, 690 (9th Cir.1985).
 
 B. Effective Date
 
 15
 HHS has the authority to designate the effective date of an amended state plan. 45 C.F.R. Sec. 201.3(g) (1987). The effective date may not be earlier than the first day of the calendar quarter in which an approvable plan is submitted. Id. Thus, in order to set the effective date, HHS must determine when an "approvable plan" was submitted. HHS designated the effective date of the first amended plan, TN 79-15, as July 1, 1979, which presumes that it found the plan approvable when originally submitted, in September 1979.
 
 
 16
 HHS's determination of the date when the amended plan became approvable was supported by substantial evidence. After the amended plan was submitted, HHS raised concerns and sought clarification of the amended plan. This was consistent with 45 C.F.R. Sec. 201.3(b) which provides that HHS staff may seek clarification of significant aspects of the plan that come to their attention in the course of the review process. Although DSHS made clarifications to each of the amended plans, particularly TN 80-7, as a result of the comments made by HHS officials, none of these clarifications substantially changed the reimbursement methodology of the plans. Furthermore, HHS officials never required DSHS to amend the first amended plan. In fact, DSHS was able to clarify TN 79-15 and TN 79-21 by letter. When DSHS subsequently submitted additional amended plans, it submitted them as separate new state plans pursuant to 45 C.F.R. Sec. 201.3(f) and it did so by its own initiative as part of the clarification process. Each subsequent amended plan was a draft that incorporated language that clarified the prior plan.
 
 
 17
 HHS obviously interpreted its regulations to mean that after an amended plan had been submitted for review, HHS could seek clarification of significant aspects of the plan, but the fact that clarification was needed would not prevent a plan whose basic elements were sound from being considered "approvable" when submitted. We do not find this construction to be plainly erroneous or inconsistent with the regulations. In accordance with this interpretation and 45 C.F.R. Sec. 201.3(g), HHS determined that TN 79-15 was approvable when submitted and designated its effective date as the first day of the calendar quarter in which it was submitted. We cannot say that this determination was arbitrary, capricious or an abuse of discretion.
 
 
 18
 The nursing home providers argue that the injunction granted by the district court and affirmed by this court precluded the new state regulation from becoming effective earlier than November 6, 1981, the actual date of approval. This court, however, in affirming the injunction, did not make any ruling as to the effective date of the amended plan, for the effective date was not in issue. As for the injunction, it was to be dissolved and the new state regulation could be implemented once HHS had approved the first amended plan. Consequently, after HHS took the necessary action of approving the amended plan, HHS was free to establish the date at which the amended plan could become effective. As long as HHS did not designate a date earlier than the first day of the calendar quarter in which the amended plan was submitted, it was acting within its authority.
 
 IV.
 CONCLUSION
 
 19
 After review, we do not find that HHS's interpretation of 45 C.F.R. Sec. 201.3 (1987) was plainly erroneous, nor its application of the regulation "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Accordingly, the district court's judgment that the amended plans were not approvable and not effective until November 6, 1981, is reversed. As a result of HHS's determination of the effective date of TN 79-15 and the effective dates of the subsequent clarifying plans, the nursing home providers are entitled to cost savings only up to July 1, 1979, the effective date of TN 79-15. Any cost savings retained by those providers after that date must be refunded to the State of Washington, while simultaneously as of that date the providers are entitled to be compensated according to the "return on equity" system set forth in the amended plans.
 
 
 20
 REVERSED.
 
 
 
 [1]
 At the time the plan was initially submitted, the approving agency was entitled the Department of Health, Education, and Welfare. Upon the division of the department, HHS became the approving agency
 
 
 [2]
 45 C.F.R. Sec. 201.3 mandates that all state medicaid plans and amendments be submitted to HHS so that HHS can review and approve the materials and establish their effective dates
 
 
 [3]
 45 C.F.R. Sec. 201.3(e) (1987) provides the following:
 Any amendment of an approved State plan may, at the option of the State, be considered as a submission of a new State plan. If the State requests that such amendment be so considered the determination as to its conformity with the requirements for approval shall be made promptly and not later than the 90th day following the date on which such a request is received in the regional office with respect to an amendment that has been received in such office, unless the Regional Commissioner, or with respect to the medical assistance program under title XIX, Regional Medicaid Director has secured from the State agency a written agreement to extend that period.
 
 
 [4]
 45 C.F.R. Sec. 201.3 provides that "[t]he effective date of a new plan may not be earlier than the first day of the calendar quarter in which an approvable plan is submitted."
 
 
 [5]
 The affidavits were supportive of the effective dates designated by HHS. They could possibly justify a new trial if DSHS could establish a justifiable reason for not producing the affidavits prior to the submission of the case to the district court. See Contempo Metal Furniture Co. v. East Texas Motor Freight Lines, Inc., 661 F.2d 761, 766 (9th Cir.1981) (citing Moylan v. Siciliano, 292 F.2d 704, 705 (9th Cir.1961)). We do not consider the affidavits here, however, because the district court would first have to rule on the question of whether such justification existed. We need not remand on this ground, however, because we find that HHS's determination of the effective dates is supported by substantial evidence, without consideration of those affidavits
 
 
 [6]
 It would appear that the district court actually conducted a de novo review of HHS's decision rather than according it the traditional deference. However, because we are in as good a position to conduct the review as the district court, we may review the district court's decision de novo, applying the appropriate standard of review to HHS's decision. See Asarco, Inc. v. U.S. E.P.A., 616 F.2d 1153, 1161 (9th Cir.1980)