■ KENNETH P. SILVERMAN, as Bankruptcy Trustee for E.G. MAY COMPANY, INC., Appellant, v MERGENTIME CORPORATION/ J.F. WHITE, INC., a Joint Venture, et al., Respondents. [676 NYS2d 301] —Cardona, P. J. Appeal from a judgment of the Supreme Court (Hughes, J.), entered June 4, 1997, upon a decision of the court in favor of defendants.

In October 1985, defendant Mergentime Corporation/J.F. White, Inc., a joint venture (hereinafter defendant), entered into a subcontract with E.G. May Company, Inc. (hereinafter plaintiff) for the installation of certain electrical systems at the Croton Reservoir in Westchester County, as part of defendant's contract with New York City for the renovation of two gate-

---

3. $186,552 $-$ $73,801 = $112,751 $\times$ .75 = $84,563.

houses and the construction of a new gatehouse. Plaintiff was to be paid $695,000 in partial payments as the work progressed. The subcontract authorized defendant to make changes in the work performed subject to an agreed-upon equitable adjustment of the subcontract price and required plaintiff to promptly proceed with the performance of the work as changed.

As the project progressed, defendant needed an additional temporary power connection to the local utility company to run construction equipment. It issued change order No. 3 on May 12, 1987[1] instructing plaintiff to provide the additional power connection on a time and material basis. By letter dated June 19, 1987, plaintiff informed defendant that it would perform the work specified in change order No. 3 if it received certain "assurances", namely, that defendant would pay for standby electricians, a noncontractual demand made as an apparent concession to a local electrical union with whom plaintiff had an agreement. Thereafter, plaintiff took no steps to perform the temporary electrical work. On July 8, 1987, defendant notified plaintiff that it would consider plaintiff in default of the subcontract unless it started performing the work by July 12, 1987. Plaintiff did not perform the work and defendant was required to rely on diesel-powered generators. On August 26, 1987, defendant terminated the subcontract and retained another electrical subcontractor who ultimately installed the temporary power without the use of standby electricians and also completed the remainder of plaintiff's work.

Plaintiff commenced this breach of contract action to recover $313,000. Following a nonjury trial, Supreme Court, *inter alia*, determined that plaintiff breached the subcontract and had been fully compensated for work performed. Supreme Court awarded defendant judgment dismissing the complaint and plaintiff appeals.

At the outset, we note that while we possess broad review power in a nonjury trial, we do give deference to the trial court's "assessment of the quality of the evidence and the credibility of the witnesses" (*Callanan Indus. v Olympian Dev.*, 225 AD2d 941, 942; *see, J & J Structures v Callanan Indus.*, 215 AD2d 890, 891, *lv denied* 86 NY2d 708). Additionally, we note that "[a] trial court's findings are not to be lightly set aside unless its conclusions could not have been reached based upon any fair interpretation of the evidence" (*Osterhout v Mesivta Sanz of Hudson County*, 226 AD2d 893, 894).

There is support in this record for Supreme Court's findings

---

1. Notably, two earlier change orders were issued and paid for without incident.

that the parties entered into a single lump-sum subcontract for $695,000 and plaintiff abandoned the job breaching the subcontract. Furthermore, there is proof that plaintiff received adequate compensation for work completed prior to the abandonment.

Contrary to plaintiff's first contention, our examination of the subcontract shows that the parties entered into a single agreement for the payment of a lump sum of $695,000, not two separate contracts of $313,000 and $382,000. While the performance of the subcontract was broken down into two phases, (1) gatehouse 1 and the pole line, and (2) existing gatehouse and the new substructure, the subcontract clearly obligated plaintiff to complete the entire project.

When it signed the subcontract, plaintiff became bound by its terms absent proof of fraud, duress or other wrongful act on defendant's part (*see, J & J Structures v Callanan Indus., supra*, at 891). There is no such showing by plaintiff in this record. On the other hand, defendant offered proof that the subcontract specifically contemplated change orders, required prompt performance of any changes[2] and required plaintiff to abide by defendant's labor agreements,[3] which included defendant's decision to use the operating engineers' union to tend the pumps rather than employ standby electricians at extra cost. Defendant also demonstrated that the subcontract specifically gave it the right to take over plaintiff's work, including the tools and materials on the jobsite, if it did not perform its work in a diligent manner.

Plaintiff seeks to excuse its failure to perform change order No. 3 by claiming that it was merely a proposal which did not provide adequate information to enable it to perform the work. However, there is no proof that plaintiff complained about inadequate information prior to suspending its performance on

---

**2.** Section 4, entitled "Changes", provides: "The Contractor may at any time by written order of Contractor's authorized representative, and without notice to the Subcontractor's sureties, make changes in, additions to or omissions from the work to be performed and materials to be furnished under this Subcontract, and the Subcontractor shall promptly proceed with the performance of this Subcontract as so changed."

**3.** Section 7, entitled "Labor", provides in relevant part: "The Subcontractor, in connection with all work covered by the Subcontract, shall comply with and be bound by any labor agreements executed by the Contractor or on Contractor's behalf to the extent that the provisions of such agreements apply to Subcontractors. Failure at any time to comply with any of the provisions of such agreements will, at the option of the Contractor, be cause for immediate termination of this Subcontract for default and the Contractor shall have all of the rights contained in Section 5 with regard to such termination."

June 19, 1987. Furthermore, the evidence shows that the same information regarding the power requirements was provided to the replacement subcontractor who completed the temporary power connection. Plaintiff also attempts to justify its failure to perform change order No. 3 based on defendant's late payments of pay requisitions submitted by plaintiff. Notably, this excuse was not proffered until after defendant notified plaintiff that it was in breach. Moreover, defendant failed to establish which of its pay requisitions were unpaid prior to June 19, 1987. Thus, upon this record, plaintiff's failure to perform was the result of its insistence upon assurances which defendant was not obligated to give.

In our view, the evidence supports Supreme Court's finding that plaintiff's unilateral suspension of the performance of change order No. 3 constituted an abandonment of the project and a breach of the "clear, complete and unambiguous" terms of the subcontract (*Mazzaroli v Cook Bldrs.*, 188 AD2d 782, 783; *see generally, Tri-Mar Contrs. v Itco Drywall*, 74 AD2d 601, 602). We also find ample support in the record for Supreme Court's finding that plaintiff was fully compensated for all work performed prior to the breach. Plaintiff's own financial cost records showed that it incurred a total cost on the project of $327,171.59. Payment records demonstrate that defendant paid plaintiff $329,248 and that plaintiff's Bankruptcy Trustee also received an undisclosed amount from the replacement subcontractor of at least $10,000 for materials left at the jobsite.

Finally, since defendant did not breach the subcontract, we find no merit in plaintiff's further contentions that it was entitled to an additional quantum meruit recovery (*see, Tri-Mar Contrs. v Itco Drywall, supra*, at 603; *Farrell Heating, Plumbing, Air Conditioning Contrs. v Facilities Dev. & Improvement Corp.*, 68 AD2d 958) or recovery of its lost profits (*see, Rogers v Maiorano*, 140 AD2d 596).

Mikoll, White, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is affirmed, with costs.