INDEPENDENT ACCEPTANCE COM-
PANY, dba San Bruno Convalescent
Hospital; California Association of
Health Facilities, a California non-
profit corporation, Plaintiffs–Appel-
lants,

v.

STATE OF CALIFORNIA; CA Dept.
Health Svcs; Kimberly Belshe,
Defendants,

and

Department of Health and Human
Services; Donna E. Shalala,
Defendants–Appellees.

No. 98–16533.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1999

Filed March 9, 2000

J. Mark Waxman, Mark E. Reagan, Foley & Lardner, San Francisco, California, for the plaintiffs-appellants.

Edmund F. Brennan, Assistant United States Attorney, Sacramento, California; Erin M. Weeks, United States Department of Health and Human Services, Washington, D.C.; Janice Hoffman, United States Department of Health and Human Services, Baltimore, Maryland, for the defendants-appellees.

Before: CANBY, CYNTHIA HOLCOMB HALL, and GRABER, Circuit Judges.

CANBY, Circuit Judge:

This case arises from efforts of the State of California to amend its state plan of medical assistance under the Medicaid Act by changing its method of reimbursement for both state-operated and non-state-operated long-term care facilities. The main issue before us is whether the Secretary of Health and Human Services acted arbitrarily or capriciously in approving State Plan Amendments ("SPAs") 90–20A and 90–20B and other subsequent amendments. We conclude that the Secretary's approval of the SPAs at issue was neither arbitrary nor capricious.[1]

### THE PARTIES

Plaintiff–Appellant Independent Acceptance Co. (dba San Bruno Convalescent Hospital) is a long-term care facility, and plaintiff-appellant California Association of Health Facilities ("CAHF") is an associa-

---

**1.** Like the parties, we use the term "arbitrary or capricious" as a shorthand for the Administrative Procedure Act's phrases "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E).

tion of long-term care providers participating in the California Medicaid Program. Defendants–Appellees are the United States Department of Health and Human Services and its Secretary, Donna E. Shalala.[2] Within the Department, the Secretary has delegated to the Health Care Financing Administration the authority to review and approve state plans for medical assistance.

## BACKGROUND

### I. The Medicaid Program

Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396u, provides for the establishment of the Medicaid program. The Medicaid program is a cooperative federal-state program whereby the federal government provides financial assistance to the states so they may furnish medical care to needy individuals. *See id.; see also Alexander v. Choate,* 469 U.S. 287, 289 n. 1, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). The states' participation in the program is entirely voluntary; those states that choose to participate, however, must comply with the Medicaid statutes and the regulations promulgated by the Secretary. *See Alexander,* 469 U.S. at 289 n. 1, 105 S.Ct. 712; *see also* 42 U.S.C. § 1396a.

To qualify for federal assistance, states must submit to the Secretary, and secure the Secretary's approval of, a plan for medical assistance. *See* 42 U.S.C. § 1396a(a) (submission), 1396a(b) (approval); *see generally* 42 C.F.R. Pt. 430, subpt. B. A state plan must contain a comprehensive statement describing the scope of the state's Medicaid program. *See* 42 C.F.R. § 430.10; 42 U.S.C. § 1396a(a). The state plan is usually an evolving document, reflecting changes in federal and state law, policy, and initiatives. *See* 42 C.F.R. § 430.12(c). The process for amending state plans allows states to change their Medicaid programs without submitting an entirely new state plan. *See* 42 C.F.R. § 430.12.

The Boren Amendment, former 42 U.S.C. § 1396a(a)(13) (1994), governed Medicaid payments for long-term care facility services during the period relevant to this appeal.[3] It was enacted to "give the states more responsibility for and flexibility in determining reimbursement rates, in order to reduce rising Medicaid costs." *Kansas Health Care Ass'n v. Kansas Dep't of Social & Rehab. Servs.,* 31 F.3d 1536, 1539 n. 3 (10th Cir.1994). The Boren Amendment establishes requirements that a state's reimbursement methodology (for health care providers) must meet in order for it to receive federal payments. *See* 42 U.S.C. § 1396a(a)(13)(A) (1994).[4]

### II. California's State Plan for Medical Assistance

This appeal challenges the validity of several SPAs submitted by the State of California to the Secretary. Among the matters in dispute are the validity of the original public notice of a plan amendment, the adequacy of that notice to serve for

---

**2.** We will refer to Independent Acceptance Company and CAHF, collectively, as "Plaintiffs." We will refer to the defendants collectively as "the Secretary."

**3.** The Boren Amendment was later repealed by the Balanced Budget Act of 1997, Pub.L. No. 105–33, 111 Stat. 251, 507 § 4711(A) (codified at 42 U.S.C. § 1396a(a)(13)(A) (1997)). Because this litigation commenced prior to the repeal of the Boren Amendment, it governs here. *See Exeter Memorial Hosp. Ass'n v. Belshe,* 145 F.3d 1106, 1108–09 (9th Cir.1998).

**4.** The Boren Amendment required that a state plan:

> provide ... for payment ... of the hospital services, nursing facility services, and services in an intermediate care facility for the mentally retarded provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State ... ) which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities ... and to assure that individuals eligible for medical assistance have reasonable access ... to inpatient hospital services of adequate quality....
>
> 42 U.S.C. § 1396a(a)(13)(A) (1994).

later versions of the amendment, and the validity of retroactive approval of amendments. The sequence of events is thus of considerable importance.

On or about December 24, 1990, the State submitted SPA 90–20 for the Secretary's review and approval. SPA 90–20 advanced two changes to the State's reimbursement methodology. First, SPA 90–20 proposed a change in the reimbursement method for *state*-operated facilities, moving from a prospective to a cost-based method. Second, it suggested changes to the reimbursement method for *non-state*-operated facilities in order to comply with federal court orders and stipulated judgments arising from prior litigation. The State published its disputed notice of proposed SPA 90–20 on December 28, 1990.

By letter of December 24, 1991, the Secretary notified the State of her decision to disapprove SPA 90–20 because the State did not supply a satisfactory "upper limits" assurance and other supporting documentation for the portion of the amendment pertaining to state-operated facilities.[5] This letter also informed the State that it could request reconsideration of the Secretary's decision.

Pursuant to 42 C.F.R. § 430.18, the State timely petitioned for reconsideration of the Secretary's decision to disapprove the amendment. The Secretary scheduled a hearing for reconsideration and published a notice of the hearing in the Federal Register. Subsequently, the State sought and obtained a stay of reconsideration proceedings to permit further negotiations. On May 13, 1994, the Secretary proposed a division of SPA 90–20 into two phases, SPA 90–20A and SPA 90–20B. SPA 90–20A included all of the provisions of the original amendment *except* those relating to state-operated facilities. SPA 90–20B incorporated *all* of the provisions of the original amendment, including those pertaining to state-operated facilities.

The Secretary proposed to approve SPA 90–20A (which did not include state-operated facilities), to be effective October 1, 1990. The Secretary decided, however, to delay the effective date of SPA 90–20B because it could be argued that the State, which by then had supplied the requested "upper limit" assurances for the state-operated facilities, had done so too late to permit an effective date of October 1, 1991. The Secretary accordingly proposed an effective date of August 1, 1991, for SPA 90–20B. The Secretary then approved both plan amendments, with the two effective dates proposed by the Secretary, on August 28, 1996.

In the meantime, after having submitted SPAs 90–20A and 90–20B, the State had presented two further plan amendments, SPAs 91–23 and 92–08, which the Secretary approved at the same time or after her approval of SPAs 90–20A and 90–20B. Plaintiffs contend that these two later amendments are invalid solely because of the defects in, and invalidity of, the earlier amendments.

Plaintiffs subsequently challenged in district court the Secretary's approval of all of these amendments, seeking to enjoin the State from using the reimbursement rates set forth in the SPAs. The district court granted the Secretary's motion for summary judgment. Plaintiffs now appeal to this court. *See* 28 U.S.C. § 1291.

## ISSUES

The general question that we must answer is whether the Secretary's approval of the challenged SPAs was arbitrary or capricious. Four sub-issues arise in considering whether the Secretary acted arbitrarily or capriciously by approving the SPAs:

(1) Whether the public notice for SPA 90–20 was sufficient, on its face and as later applied to SPAs 90–20A and 90–20B, to permit the Secretary to

---

**5.** The "upper limits" assurance is a required assurance that the agency's proposed payments will not exceed the upper payment limits established by Medicare. *See* 42 C.F.R. § 447.253(a), (b)(2).

accept the State's assurances of notice.

(2) Whether the Secretary's approval of SPAs 90–20A and 90–20B, in light of the assurances submitted by the State, was arbitrary or capricious.

(3) Whether the Secretary's setting of the effective dates for SPAs 90–20A and 90–20B was arbitrary or capricious.

(4) Whether, in light of the above issues, the Secretary's approval of subsequent SPAs 91–23 and 92–08 was arbitrary or capricious.

We conclude that the Secretary's approval of the SPAs at issue was neither arbitrary nor capricious. The Secretary's approval of the SPAs is consistent with the Medicaid statute and regulations and is supported by substantial evidence in the record.

## STANDARD OF REVIEW

■ We review de novo the district court's granting of the Secretary's motion for summary judgment. *See Bianchi v. Walker,* 163 F.3d 564, 569 (9th Cir.1998), *cert. denied,* —— U.S. ——, 120 S.Ct. 50, 145 L.Ed.2d 44 (1999). Pursuant to the Administrative Procedure Act, 5 U.S.C. § 706, an agency's action must be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or if it is "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E); *see also Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 413–14, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Natural Resources Defense Council v. United States Dep't of Interior,* 113 F.3d 1121, 1123–24 (9th Cir.1997). This standard of review is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *California Hosp. Ass'n v. Schweiker,* 559 F.Supp. 110, 116 (C.D.Cal.1982) (citing *Hotel Employers Ass'n of S.F. v. Gorsuch,* 669 F.2d 1305, 1307 (9th Cir.1982)), *aff'd,* 705 F.2d 466 (9th Cir.1983). Moreover, we must give the Secretary's interpretation of her own regulations "substantial deference," and

we must give such interpretation controlling weight unless doing so is inconsistent with the regulation or plainly erroneous. *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994).

## ANALYSIS

### I. Notice

Plaintiffs present three general arguments challenging the adequacy of the public notice provided by the State regarding SPAs 90–20A and 90–20B. First, Plaintiffs contend that the notice for SPA 90–20 was defective on its face because it did not conform strictly to the pertinent federal regulation. Second, Plaintiffs argue that the State was required to give new public notice for SPAs 90–20A and 90–20B because it could not rely on the original public notice, given in December 1990, for SPA 90–20. Finally, Plaintiffs maintain that the change in the effective date for SPA 90–20B from October 1, 1990, to August 1, 1991, constituted a "significant proposed change" requiring new notice pursuant to 42 C.F.R. § 447.205(a) (1997). Plaintiffs argue that, as a result, the Secretary's approval of SPAs 90–20A and 90–20B was arbitrary and capricious. We find Plaintiffs' arguments unpersuasive.

### A. The State's Assurance of Notice

■ The regulations issued pursuant to the Boren Amendment require the State to furnish public notice of "any significant proposed change in its methods and standards for setting payment rates for services." 42 C.F.R. § 447.205(a) (1997). The regulation also sets forth a list of subjects that must be included in the notice, *see* § 447.205(c); we discuss those requirements in the next section below. It is important to emphasize at the outset, however, that we are reviewing the action of the Secretary in approving the plan amendments. Our duty is not to determine for ourselves whether the State's notice sufficiently complied with the statute

and regulations; that duty is imposed upon the Secretary. The regulations provide that the State's "assurances" of notice and of compliance with certain other requirements must be "satisfactory" to the Secretary. 42 C.F.R. § 447.253(a), (h).[6] Thus the inquiry for our review is whether the Secretary acted arbitrarily or capriciously when she accepted the State's assurance of notice as satisfactory to her, in light of the record presented by the State regarding notice for SPA 90–20. We conclude that, in accepting the State's assurances, the Secretary was not required to hold the State to absolutely literal compliance with the notice requirements. The Secretary had discretion to determine whether the State had given sufficient assurance that its notice was in substantial compliance: that is, that it accomplished all of the purposes for which the notice requirement was inserted into the regulations.

■ This conclusion fits the scheme of increased state independence that was the purpose of the Boren Amendment. Under that Amendment, a state Medicaid agency must engage in a " 'finding' process that all federal requirements have been met to substantiate its assurances," for its proposed change in methodology. *Kansas Health Care*, 31 F.3d at 1539. In addition, the state agency must furnish the Secretary with assurances that all relevant federal regulations have been fulfilled but the state agency need not furnish its findings. *See Pinnacle Nursing Home v. Axelrod,*

928 F.2d 1306, 1313 (2d Cir.1991). Thus, for the actual change in methodology, the Secretary reviews only the reasonableness of the assurances, not the findings. *See Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 507–08, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990); *see also Kansas Health Care,* 31 F.3d at 1539; *Illinois Health Care Ass'n v. Bradley,* 983 F.2d 1460, 1463 (7th Cir.1993).[7] To be sure, we can judge whether the Secretary's acceptance of the assurance was arbitrary or capricious only by examining the documentation presented to the Secretary by the State to demonstrate its compliance with the requirements. But the Secretary clearly retains some discretion in deciding what the State must demonstrate to make its assurances "satisfactory" to her within the meaning of the regulation. *See* 42 C.F.R. § 447.253(a). Without attempting to define the bounds of that discretion, we conclude that a notice that substantially complies with 42 C.F.R. § 447.205(c) suffices to permit the Secretary to exercise her discretion to accept the State's assurance of notice. We turn then to the State's notice for SPA 90–20.

**B. Validity of the SPA 90–20 Notice**

Plaintiffs attack the substance of the notice for SPA 90–20, arguing that the notice is invalid because it did not comply strictly with 42 C.F.R. § 447.205(c) (1997). The notice for a proposed change in the method of reimbursement must (among other things): "(1) [d]escribe the proposed

---

6. Section 447.253 provides in pertinent part:

   (a) *State assurances.* In order to receive HCFA approval of a State plan change in payment methods and standards, the Medicaid agency must make assurances satisfactory to HCFA that the requirements set forth in paragraphs (b) through (i) of this section are being met, must submit the related information required by § 447.255 of this subpart, and must comply with all other requirements of this subpart.

   · · · · ·

   (h) *Public notice.* The Medicaid agency must provide that it has complied with the public notice requirements in § 447.205 of

   this part when it is proposing significant changes to its methods or standards for setting payment rates for inpatient hospital or LTC facility services.

7. By enacting the Boren Amendment, Congress significantly decreased the Secretary's role in the rate-setting process in state plans for medical assistance. *See Illinois Health Care,* 983 F.2d at 1463. Although the Secretary must approve the state plans, she does not examine the methods used by the states to determine their reimbursement rates. *See id.* Thus, the Secretary reviews only the reasonableness of the assurances rather than scrutinizing the states' findings or underlying data. *See id.*

change in methods and standards; (2)[g]ive an estimate of any expected increase or decrease in annual aggregate expenditures; [and] (3)[e]xplain why the agency is changing its methods and standards." 42 C.F.R. § 447.205(c)(1)-(3).

We conclude that the record notice was sufficient to permit the Secretary to accept the State's assurance of notice. Although the notice provided for SPA 90–20 may not comply strictly with § 447.205(c), it complies substantially. First, the notice describes the "proposed change in methods and standards." 42 C.F.R. § 447.205(c)(1). The notice states that "Medi–Cal Provider Reimbursement Rates" are at issue, and it refers readers to Title 22 of the California Code of Regulations and to a "Statement of Reasons and Text of Regulations." Moreover, the fact that the notice even exists indicates that the State has proposed changes to reimbursement methods and standards because the regulation requires notice only in such circumstances. *See* 42 C.F.R. § 447.205(a). In addition, the notice informs the public that the amendment responds to legislative and court action, among other things. Thus, the notice both tells a reader that reimbursement rates will be affected and leads the reader to more detailed information—at least substantially, if not strictly, complying with section 447.205(c)(1).

Second, Plaintiffs concede that the notice estimates, albeit briefly, the expected changes in aggregate annual expenditures. *See* 42 C.F.R. § 447.205(c)(2). Third, the notice informs the public why the agency is altering its methods by referring readers to a "Statement of Reasons." *See* 42 C.F.R. § 447.205(c)(3). It is true that a notice that included the statement of reasons in the notice itself would strictly comply with the regulation. But a notice that instead contains a reference to other materials where the information can be found substantially complies with the regulation and adequately informs the public. As the district court stated:

[T]his notice [for SPA 90–20] is adequate in the circumstances; that is, in the circumstances of providing adequate knowledge to the kind of groups and people that are interested in what the State is doing in this area.... [I]t certainly gives anyone involved in the industry notice of what it is that the State is trying to do here, and it refers you to the appropriate legislation and regulations.

Because the notice was sufficient to accomplish its purpose with regard to the various elements set forth in 42 C.F.R. § 447.205(c), the Secretary could properly accept it.

"[N]otice" provisions are neither invariably nor primarily designed to afford exhaustive disclosure, but to alert interested parties that their substantive rights may be affected in a forthcoming public proceeding. Accordingly, [the Secretary] might reasonably anticipate that the State would provide more detailed information, relating to its methodology, at the public hearings, especially since it is in the State's interest to respond to reasonable requests for further information at the public hearings....

*Visiting Nurse Ass'n of N. Shore v. Bullen,* 93 F.3d 997, 1010 (1st Cir.1996) (citations omitted). Notice provisions are designed to " 'outline[ ] the substance of the plan in sufficient detail to allow interested parties to decide how and whether to seek more information on the plan's particular aspects.' " *Id.* (quoting *Mississippi Hosp. Ass'n v. Heckler,* 701 F.2d 511, 520 (5th Cir.1983)). Indeed, a wooden requirement of absolutely strict compliance with the literal wording of the regulation would appear to "conflict irreconcilably with the clear legislative and rulemaking intent that ... administrative requirements be kept to [a] minimum." *Oklahoma v. Shalala,* 42 F.3d 595, 603 (10th Cir.1994). We conclude, therefore, that the notice for SPA 90–20 was sufficient to permit the Secre-

tary to accept the State's assurance of notice.

We reject Plaintiffs' contention that the notice for SPA 90–20 was untimely. Notice must be "published before the proposed effective date of the change." 42 C.F.R. § 447.205(d)(1). The State published notice on December 28, 1990, which was prior to August 1, 1991, the effective date for SPA 90–20B. SPA 90–20A's effective date of October 1, 1990, was permissible because the "significant proposed changes" in the State Plan were made pursuant to court orders and stipulated judgments, rendering it exempt from the notice requirement. *See* 42 C.F.R. § 447.205(b)(2).

### C. New Notice for SPAs 90–20A and 90–20B

■ Plaintiffs argue that, in the process of bifurcating SPA 90–20 into SPA 90–20A and SPA 90–20B, "significant proposed changes" were made to the State's reimbursement methodology, requiring new notice. *See* 42 C.F.R. § 447.205(a) (1997). Plaintiffs misconstrue the relationship between SPA 90–20 and SPAs 90–20A and 90–20B. The Secretary bifurcated SPA 90–20 because the proposed changes ultimately would have different effective dates. Thus the changes contemplated by SPA 90–20 for non-state-operated facilities were incorporated in SPA 90–20A, and the changes for state-operated facilities were incorporated in the later-effective SPA 90–20B. Because there were no changes of substance from SPA 90–20, the bifurcation required no new notice.

Plaintiffs next contend that, because the Secretary initially disapproved SPA 90–20, the notice became a nullity and could not be revived to cover SPAs 90–20A and 90–20B. The defect in this argument is that the Secretary's disapproval of SPA 90–20 had not become final; reconsideration was set for hearing and then stayed. That fact distinguishes this case from *State of New York v. Shalala,* 119 F.3d 175 (2d Cir. 1997), relied upon by Plaintiffs. In *New York,* the court had declared a state plan amendment "null and void" for failure to comply with Medicaid procedures pursuant to the Boren Amendment. *Id.* at 180. The State then submitted an entirely new plan amendment and argued that the notice for its original amendment sufficed. *Id.* at 182. The Secretary ruled that notice of a totally nullified amendment could not suffice to give notice for a new amendment, and the Second Circuit deferred to the Secretary's determination. *See id.*

Our case is clearly different from *New York.*[8] Here, the original amendment was being reconsidered and the bifurcation into SPAs 90–20A and 90–20B was a direct outgrowth of the negotiations for which reconsideration was stayed.[9] The entire process begun by submission of SPA 90–20 was very much alive. Moreover, the Secretary did not reject the notice, as in New York, but accepted it. In light of the circumstances and the deference owed the Secretary, we conclude that the Secretary acted neither arbitrarily nor capriciously in declining to require new notice for SPAs 90–20A and 90–20B.

### D. Change in the Effective Date

■ We also reject Plaintiffs' argument that a change in the effective date for SPAs 90–20A and 90–20B constitutes a "significant proposed change" in reimbursement methodology, requiring new notice. Section 447.205(a) of the regulations in effect under the Boren Amendment sets

---

8. In fact, *New York* supports our conclusion. The Second Circuit ruled that the State could have "revived" its nullified original plan by submitting the proper assurances. *New York,* 119 F.3d at 180. Instead, the State submitted an entirely new amendment (with some changes). *See id.* at 181–83.

9. The regulations clearly contemplate that a state may request reconsideration of the Secretary's decision to disapprove a plan amendment. *See* 42 C.F.R. § 430.18(a). In addition, the regulations allow the Secretary and a state to negotiate before, during, and after the hearing in order to resolve "the issues that are, or otherwise would be, considered at the hearing." 42 C.F.R. § 430.60(b).

forth the instances in which notice is required; it nowhere mandates notice for a change in the effective date. *See* 42 C.F.R. § 447.205(a) (1997). The regulations require that notice be given only for "any significant proposed change in [the agency's] methods and standards for setting payment rates for services." *Id.* Thus, a change in the effective date does not fall under section 447.205(a).[10]

The Secretary acted within her authority to set the effective dates of SPAs 90–20A and 90–20B in not requiring notice of a change in the effective dates. *See Washington State Health Facilities Ass'n v. State of Washington, Dept. of Social and Health Services,* 879 F.2d 677, 681 (9th Cir.1989). The Secretary's interpretation of her regulations is entitled to a "high degree of deference," *id.,* and clearly was neither arbitrary nor capricious in this instance.

## II. Assurances of Rates to Meet Costs of Efficient and Economic Operation

■ Pursuant to the Boren Amendment, the State must provide an assurance that the rates set by the proposed SPA "are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." 42 U.S.C. § 1396a(a)(13)(A) (1994) ("EEOF assurance"). Plaintiffs assert that the State never submitted an EEOF assurance. The record indicates to the contrary.

After the State submitted SPA 90–20, the Secretary requested additional information regarding the proposed amendment, in a letter dated March 25, 1991. The letter highlighted deficiencies in the

EEOF assurance and requested an "adequate explanation or rationale" for the proposed shift from a prospective payment system to a cost-reimbursement system. The State replied in a letter of September 24, 1991, which provided additional information regarding the EEOF assurance. When subsequently approving SPA 90–20B (incorporating all provisions of the original SPA 90–20, including the change in methodology for state-operated facilities), the Secretary acknowledged that the State had supplied the requested information and that her approval of the SPA was based on such information.

With regard to adequacy of the assurance, the Secretary's determination is entitled to deference. *See Folden v. Washington State Dep't of Soc. & Health Servs.,* 981 F.2d 1054, 1058 (9th Cir.1992). The Secretary "is charged with the interpretation of the Boren Amendment and, thus, [her] interpretation is entitled to deference." *Id.* Exercising this deferential review of the record, we conclude that the Secretary's determination that the State submitted adequate assurances and her subsequent approval of SPAs 90–20A and 90–20B were neither arbitrary nor capricious.[11]

## III. Effective Dates

■ The Secretary approved effective dates of October 1, 1990, for SPA 90–20A and August 1, 1991, for SPA 90–20B. Section 447.256(c) provides that a state plan amendment may not become effective before the "first day of the calendar quarter in which an *approvable* amendment is submitted." 42 C.F.R. § 447.256(c) (1997)

---

**10.** Plaintiffs misconstrue *New York* as holding that a change in effective date requires new notice. *New York* instead held that, because the State had submitted an entirely new plan amendment, new notice had to precede a new effective date. *See New York,* 119 F.3d at 183.

**11.** Plaintiffs also argue that the State supplied an invalid "upper limits" assurance (see note 5, *supra*) because it allegedly utilized data from a time-frame not permitted under California's State Plan. Yet, when approving SPA

90–20B, the Secretary determined that the State did provide the essential information for the upper limits assurance. The Secretary's interpretation of her regulations and her determination that the assurance complied with the pertinent regulation is afforded great deference. *See Thomas Jefferson Univ.,* 512 U.S. at 512, 114 S.Ct. 2381. On this record, we conclude that the Secretary's acceptance of the upper limits assurance was neither arbitrary nor capricious.

(emphasis added). Plaintiffs contend that, because the Secretary initially disapproved SPA 90–20, there was no "approvable" amendment on the table to support effective dates of October 1, 1990, and August 1, 1991.

Plaintiffs' argument gives too wooden a meaning to "approvable" and fails to take account of the realities of the approval process. State plan amendments are complicated proposals, and the Secretary frequently must find that all of the requirements have not been met in the original submission. If an initial failure to approve, or even an initial disapproval that was subject to reconsideration, were taken to mean that no "approvable" plan was under submission, the regulation effectively would have been rewritten to require an amendment "approved without change," not an "approvable" one. For that reason, we have held that, even though the Secretary had withheld approval of a submitted amendment pending written "clarifications," the Secretary could properly determine that the original submission was of an "approvable" plan for purposes of establishing an effective date. *See Washington State Health Facilities Ass'n*, 879 F.2d at 681.

We conclude that the same principle applies here. After SPA 90–20 was initially disapproved, the State invoked the reconsideration process, as clearly contemplated by 42 C.F.R. § 430.18(a).[12] As we pointed out in discussing the notice issue, negotiations over SPA 90–20 were very much alive, and they resulted in approval of SPAs 90–20A and 90–20B, which did not differ in any material particular from SPA 90–20. SPA 90–20, which the Secretary ultimately accepted with only minor alterations in the form of SPAs 90–20A and 90–020B, was and continued to be an "approvable" plan for purposes of setting the two effective dates, or at least the Secretary reasonably could so determine.[13] The Secretary accordingly did not abuse her discretion in setting the effective dates of October 1, 1990, and August 1, 1991.[14]

## IV. Validity of Subsequent SPAs

Plaintiffs' challenges to the Secretary's approval of the later plan amendments, SPAs 91–23 and 92–08, were wholly derivative; they depended on Plaintiffs' establishing that the assurances for, and approval of, SPAs 90–20A and 90–20B were invalid. Because we uphold in every respect the Secretary's rulings approving SPAs 90–20A and 90–20B, Plaintiffs' challenges to SPAs 91–23 and 92–08 necessarily fail.

## CONCLUSION

We conclude that the Secretary acted neither arbitrarily nor capriciously in approving the SPAs at issue. Her approval of the SPAs is consistent with the Medicaid statute and regulations and is supported by substantial evidence in the record.

The judgment of the district court is

**AFFIRMED.**

12. Similarly, we reject Plaintiffs' contention that SPAs 90–20A and 90–20B cannot have effective dates prior to April 1, 1996, because, in Plaintiffs' view, the SPAs were not submitted until May 1996 (when the State replaced SPA 90–20 with SPAs 90–20A and 90–20B). For the reasons given above, and because SPAs 90–20A and 90–20B were simply variations of the original 90–20, they were not newly submitted in April 1996 as Plaintiffs suggest.

13. To avoid any controversy, the Secretary did take into account the fact that a required

upper limit assurance for state-operated facilities had not been submitted prior to her initial disapproval of SPA 90–20. Because that assurance related to a period after the original submission date but before August 1991, the Secretary proposed and ultimately approved an effective date for SPA 90–20B of August 1, 1991.

14. Plaintiffs assert other arguments challenging the effective dates, some of which duplicate the contentions advanced above. We find these arguments to be without merit.